UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILIP ABROMATS,                                                    **DECISION AND ORDER**

                                        Plaintiff,
                                                                    15-CV-00904-RJA-JJM
v.

GEORGE CLIFFORD ABROMATS and
JANICE WOROBEC,

                                        Defendants.

_____

        This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings [14].[1]  Before me is defendants' motion to dismiss or, in the alternative, to transfer the venue of this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1404(a) [37].  During oral argument on March 4, 2016 [42], defendants withdrew that portion of their motion seeking dismissal, without prejudice to reassertion at a later date.

        For the following reasons, the motion is granted to the extent it seeks transfer of venue, but is otherwise denied, without prejudice.[2]

---

[1]      Bracketed references to CM/ECF docket entries.

[2]      "A motion for change of venue is not listed among the relief in 28 U.S.C. §636(b) that is expressly dispositive (that is, requiring a Report and Recommendation). District courts nationally (including this Court) have split on whether a motion to change venue is dispositive or non-dispositive . . . . [T]his Court will adhere to its more recent practice and consider the motion to change venue as non-dispositive and hence decided here by an Order . . . . [T]he motion to change venue does not end federal court jurisdiction. A transfer of venue keeps the case open and within the federal judiciary, but merely moves the action from one district to another." D'Amato v. ECHL, Inc., 2015 WL 2151825, **1, 3 (W.D.N.Y. May 7, 2015) (Scott, M.J.).

## BACKGROUND

This action arises from a dispute between plaintiff ("Philip") and his brother, defendant George Clifford Abromats ("Clifford"), involving two revocable trust agreements established in the State of Florida by their now deceased parents, George and Gloria Abromats, for which Clifford currently serves as trustee.

On October 16, 2015, Philip commenced this action against Clifford and his wife, Janice Worobec ("JJ").  Complaint [1].  He filed a First Amended Complaint on October 26, 2015 [4], seeking: a determination that Gloria Abromats' January 19, 2011 amendment to her trust (removing Philip as a beneficiary) was the result of  Clifford's undue influence and is therefore invalid (Count One);[3] an accounting from Clifford for both trusts (Count Two); damages and equitable relief from Clifford for breach of trust and fiduciary duty (Counts Three and Four); recovery of excess compensation paid to Clifford (Count Five); a declaratory judgment that Gloria Abromats' September 30, 2011 amendments to her trust agreement (*inter alia*, reinstating Philip as a 50% beneficiary) are valid and enforceable (Count Six); an injunction directing immediate distribution of funds to Philip from George Abromats' trust (Count Seven); an injunction preventing Clifford from collecting on notes executed by Philip and his wife in favor of Gloria Abromats' trust (Count Eight); an injunction preventing Clifford from using trust assets for legal fees to defend himself  against Philip's charges (Count Nine); removal of Clifford as trustee of both trusts (Count 10); reformation of a $300,000 note executed by Clifford in favor of George Abromats' trust to make it payable immediately (Count Eleven); damages for conversion of trust

---

[3]      The First Amended Complaint alleges that at that time "[t]here was a mental inequality between Cliff, a highly educated man with no mental disabilities, and Gloria, who was suffering from Alzheimer's Disease". [4], ¶185.

property (Count Twelve); damages for tortious interference with Philip's inheritance (Count

Thirteen); and damages for civil conspiracy (Count Fourteen).

On November 19, 2015, Clifford commenced two actions against Philip in the

Circuit Court of the Seventeenth Judicial Circuit for Broward County, Florida.  The first action

[20-1] seeks judicial approval of his accountings for the George Abromats trust, and the second

action [20-4] seeks approval of his accountings for the Gloria Abromats trust, as well as a

declaration that her September 30, 2011 amendments to that trust are null and void [20-4].


## ANALYSIS

28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought".  The parties agree that this action "might have been

brought" in the Southern District of Florida. Defendants' Memorandum of Law [37-4], p. 15;

plaintiff's Brief in Opposition [38], p. 10.

"Section 1404(a) is intended to place discretion in the district court to adjudicate

motions for transfer according to an individualized, case-by-case consideration of convenience

and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Van Dusen v.

Barrack, 376 U.S. 612, 622 (1964).  The parties characterize this discretion as "especially strong".

Plaintiff's Brief in Opposition [38], p. 11, n. 9; Defendants' Reply Memorandum of Law [41],

p. 1.

Since "the party requesting transfer carries the burden of making out a strong case

for transfer", New York Marine & General Insurance Co. v. Lafarge North America, Inc., 599

F.3d 102, 114 (2d Cir. 2010), "[i]t is therefore appropriate that the district courts in our Circuit

have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion". Id. However, the moving party's burden "is less stringent than under the former doctrine of *forum non conveniens* since transfer under §1404(a) does not result in dismissal". O'Brien v. Goldstar Technology, Inc., 812 F. Supp. 383, 385 (W.D.N.Y. 1993) (Heckman, M.J.).

In deciding the motion, the court should consider "(1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded plaintiff's choice of forum, and (9) trial efficiency and the interest of justice", based on the totality of the circumstances. Invivo Research, Inc. v. Magnetic Resonance Equipment Corp., 119 F.Supp.2d 433, 436 (S.D.N.Y.2000).

"No one factor is determinative; rather the court, pursuant to its discretion, equitably balances the above factors in ruling upon a motion to change venue." Praxair, Inc. v. Morrison Knudsen Corp., 2001 WL 118585, *2 (W.D.N.Y. 2001) (Elfvin, J.). Accordingly, each factor will be considered:

**The Convenience of Witnesses**

"Convenience of witnesses is the most powerful factor governing the decision to transfer a case . . . . Courts consider the convenience of witnesses both to minimize the burden they must face, and to secure live testimony at trial." In re Eastern District Repetitive Stress Injury Litigation, 850 F. Supp. 188, 194 (E.D.N.Y. 1994). "When assessing the convenience of

witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum.  Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide."  Herbert Limited Partnership v. Electronic Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).  "The convenience of non-party witnesses generally carries more weight than the convenience of party witnesses."  Id.

While defendants list several nonparty witnesses who reside in Florida, including Gloria Abromats' physicians and caregivers, the witnesses to the trust amendments, and the accountants who prepared the trust accountings (defendants' Memorandum of Law [37-4], p. 16), they fail to state the expected testimony of those witnesses.  However, "in cases where discovery has not been conducted, a party will not be held to the requirement of stating with precision each witness".  GE Capital Franchise Finance Corp. v. Cosentino, 2009 WL 1812821, *4 (W.D.N.Y. 2009) (Skretny, J.).

Moreover, it seems clear that at least one of those individuals, attorney Jack Baxter, Jr. (whose office is in Fort Lauderdale), will be a very significant witness.  For example, annexed to the First Amended Complaint is his letter to Philip dated September 6, 2011 [4-1], in which he stated:  "Your mother's trust was amended on January 19, 2011, and you are no longer a beneficiary of the trust upon her death. Please be advised that this change was made after many conferences between myself, your mother and Cliff  . . . . I went into great detail with her prior to her making the changes about what she was doing and am convinced she was well aware of what she was doing at the time she executed the change documents.  She made these changes freely and voluntarily.  Cliff did not influence her decision to remove you from her plan . . . . When her final

decision was made, I made sure I went over it with her alone, with no outside person in the meeting."

Furthermore, Philip alleges that on September 15, 2011, Baxter participated in a three-way conference call with Philip and Gloria Abromats, in which Gloria stated that it was her intention that Philip and Clifford be treated equally, and that in response to that statement, Baxter refused to take any action. First Amended Complaint [4], ¶¶107-09. Philip further alleges that on that same date (merely two weeks before Gloria executed the amendment reinstating Philip as a beneficiary of her trust), Baxter told Philip that he had spoken to Gloria the previous day, that she had no desire to change her estate plan, but that she "remains able to make revisions to her state estate plan as she should desire". Id., ¶119.

Therefore, it appears that Mr. Baxter's testimony will be extremely material in resolving some of the major issues in this case, namely the validity and enforceability of Gloria Abromats' amendments to her trust in January and September 2011. Particularly when coupled with the fact that the parties have identified *no* non-party witnesses who reside in the Western District of New York, this factor weighs heavily in favor of transfer.

**The Convenience of the Parties**

Although defendants reside in New York, they "are amenable to proceeding in Florida so the issue of convenience is not [a] factor as to them; Plaintiff lives in Wyoming, so it cannot be said that either jurisdiction (*i.e.*, Florida or New York) is any more or less convenient." Defendants' Memorandum of Law [37-4], p. 16. Philip responds that "[a]ccording to Mapquest, it is about 1780 miles and 28 hours driving distance from Plaintiff's house to the federal courthouse in Buffalo. On the other hand, it is about 2,480 miles and 38 hours driving distance to

Ft. Lauderdale . . . . [P]laintiff will probably drive to and from trial." Plaintiff's Brief in

Opposition [38], p. 17.  I do not find the differential in time or distance between Buffalo and

Wyoming or Florida to be particularly significant.

While Philip also argues that he is "unusually sensitive to heat and humidity, and

avoids Florida where whenever he can" (id.), elsewhere he states that he "has been litigating in

federal courts around the United States since 2000" (id., p. 23), presumably not solely in cold

weather climates.  In any event, as defendants point out, Philip's alleged heat sensitivity "is

speculative in the extreme as no trial dates have been scheduled:  South Florida in the winter can

be very temperate; just as Western New York can be oppressively hot and humid in the summer".

Defendants' Reply Memorandum [41], p. 3, n. 1.

Therefore, this factor is neutral.


**The Locus of Operative Facts**

"The location of the operative events is a primary factor in determining a §1404(a)

motion to transfer."  Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002).

Philip alleges that when Gloria Abromats executed the January 2011 amendment removing him as

beneficiary to her trust, defendants "maintained a second residence in the West Palm Beach area,

within reasonable driving distance of Gloria" and "either planted the idea for Philip's

disinheritance by Gloria, or reinforced and encouraged the idea if Gloria thought of it herself".

First Amended Complaint [4], ¶¶92, 94.  Philip further alleges that he traveled to Fort Lauderdale

at the end of September 2011, met with Gloria, drafted the amendments reinstating him as a

beneficiary, and had her execute them.  Id., ¶¶123-135.  Moreover, the trust accountings which

are also at issue were prepared by a Florida accounting firm [20-2, 20-9].

Any doubt as to the locus of operative facts is removed by Philip's request for "a referral by this Court to the United States Attorney for the Southern District of Florida for investigation of potential mail fraud, wire fraud, and other violations of federal criminal law". First Amended Complaint [4], p. 43, ¶17.  Therefore, this factor favors transfer.

**The Availability of Process to Compel the Attendance of Unwilling Witnesses**

Noting that defendants have not identified any witnesses who are unwilling to travel, Philip argues that "[i]t is up to the movement to determine who its non-party witnesses are, and establish that they are not willing to testify without compulsory process, otherwise this factor can only be given little weight".  Plaintiff's Brief in Opposition [38], p. 18.

Even if this factor may be given only "little weight", it does weigh (albeit slightly) in favor of transfer.  *See* <u>Viera v. Basf Catalysts LLC</u>, 2015 WL 9302836, *5 (S.D.N.Y. 2015) ("while neither party has identified witnesses who are unwilling to testify, Defendants have indicated that all likely witnesses reside in Florida.  Accordingly, if there are witnesses who are unwilling to testify, they are more likely to fall within the reach of a Florida court's subpoena power than this Court's power to compel testimony . . . . The availability of process thus weighs slightly in favor of transfer").

**The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof**

Defendants note that "[m]odern technology has rendered this factor largely moot".  Defendants' Memorandum of Law [37-4], p. 17.  Philip agrees.  Plaintiff's Brief in Opposition [38], p. 16.

-8-

**The Relative Means of the Parties**

Having carefully reviewed Philip's Affidavit detailing his current financial situation [38-1], I recognize that at present there is a significant financial disparity between the parties.  However, as Philip points out, "[a] party arguing against  . . . transfer because of inadequate means must offer documentation to show that transfer . . . would be unduly burdensome to his finances".  Plaintiff's Brief in Opposition [38-1], p. 20 (*quoting* Mastercard International, Inc. v. Lexcel Solutions, Inc., 2004 WL 1368299, * 7 (S.D.N.Y. 2004)).

In my view, Philip has not shown that the transfer itself would place him at a significantly greater disadvantage *vis-à-vis* defendants.  His principal argument in that regard is that the Southern District of Florida has stringent requirements for affiliation with local counsel before *pro hac vice* admission can be granted, and that he "probably would not even be able to pay for local counsel in Florida and would be placed at great hardship were he forced to proceed there *pro se*".  Plaintiff's Brief in Opposition [38], p. 20.  However, that district allows for waiver of the local counsel requirement "for good cause shown",[4] and Philip has not shown that such a waiver would not be granted. Moreover, given the fact that he "has been litigating in federal courts around the United States since 2000" (id., p. 23), I fail to see how Philip would be significantly disadvantaged by the transfer even if he did have to litigate *pro se* – particularly since he would still have the behind-the-scenes assistance of his wife, Letitia Abromats, who is currently representing him in this court.

---

[4]     *See* S.D.Fla. "Special Rules Governing the Admission and Practice of Attorneys", Rule 4(b)(1) and (2); Saperstein v. Palestinian Authority, 2008 WL 4467535, *1 (S.D. Fla. 2008) ("defense counsel Schilling and Clark moved for admission *pro hac vice* and also moved the Court to waive the local counsel requirement . . . . [T]he Court granted defense counsel's *pro hac vice* applications").

In any event, "while the relative bargaining power and financial positions of the parties can be a significant factor in a transfer decision, it alone cannot defeat transfer where . . . the other factors clearly favor transfer". Moghaddam v. Dunkin Donuts, Inc., 2002 WL 1940724, *4 (S.D. Fla. 2002). Therefore, this factor does not weigh heavily against transfer.

**The Forum's Familiarity with Governing Law**

The parties agree that Florida law governs the resolution of their dispute. Defendants' Memorandum of Law [37-4], p. 18; plaintiff's Brief in Opposition [38], p. 21. "Accordingly . . . a Florida federal court is better suited to apply Florida state law than a New York federal court." GE Capital, 2009 WL 1812821, *6. "There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947).

Philip argues that "[w]here, as here, the issues of state law are garden-variety principles every law student is exposed to, both fora are deemed equally competent to adjudicate the case". Plaintiff's Brief in Opposition [38], p. 21. I do not view the issues in this case as "garden-variety", but even if they were, this factor would still support transfer. *See* GE Capital, 2009 WL 1812821, *6 ("while there may not be novel or complex issues of State law to be resolved, construction of State law is best left to courts most familiar with it"); Kreisner v. Hilton Hotel Corp., 468 F. Supp. 176, 170 (E.D.N.Y. 1979).

**The Weight Accorded Plaintiff's Choice of Forum**

    "The plaintiff's choice of venue is . . . entitled to substantial consideration, although not so much upon a motion to transfer under 28 U.S.C. 1404(a) as upon a motion to dismiss for forum non conveniens." A. Olinick & Sons v. Dempster Brothers, Inc., 365 F.2d 439, 444 (2d Cir. 1966). However, Philip is a citizen of Wyoming, not New York, and "a plaintiff's choice of forum is entitled to less deference if he is not a citizen of the forum". Scovil v. Medtronic, Inc., 995 F. Supp. 2d 1082, 1099 (D. Ariz. 2014).

    "Furthermore, a plaintiff's choice of forum should carry less weight in a declaratory judgment action where it is often attempting to preempt what it perceives as a threat of suit . . . . In such situations, a plaintiff's posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief." Emerging Vision, Inc. v. For Eyes Optical Co., 2009 WL 702243, *4 (S.D.N.Y. 2009). Count Six of the First Amended Complaint is entitled "Declaratory Judgment that the September 2011 Amendments to Gloria's Trust are Valid and Enforceable". [4], p. 32. Philip admits that he "heard . . . through my Florida counsel that my brother was likely to litigate the validity of the September 30, 2011 re-inheriting amendment" (Abromats Affidavit [38-1], ¶16), and "decided to file suit in the Western District of New York just to 'get things off the dime' and moving". Id., ¶18.

    Therefore, this factor does not weigh against transfer.

**Trial Efficiency and the Interest of Justice**

    Defendants have submitted statistical information [37-2, 37-3] indicating that, on average, cases are disposed of more quickly in the Southern District of Florida than in this district. While that information cannot predict how quickly any particular case will progress, it is

worthy of some consideration. *See* <u>Lencco Racing Co. v. Arctco, Inc.</u>, 953 F. Supp. 69, 73 (W.D.N.Y. 1997) (Larimer, J.) ("Courts have held that the relative docket conditions of the transferor and transferee courts may be considered in determining a motion to transfer . . . . . These statistics suggest that the actions would be tried sooner in the Western District of Michigan than here . . . . Accordingly, I find that trial efficiency and the interest of justice weigh in favor of a transfer of these actions").

**Timeliness of this Motion**

Philip argues that the motion to transfer is premature, and should therefore be denied without prejudice to renewal at a later date. Plaintiff's Brief in Opposition [38], pp. 22-24. I disagree. "No hard and fast rule should preclude the making of the motion at any time that does not operate to delay unduly the disposition of the action. Indeed, since [§]1404(a) looks to sound judicial administration, a court is not foreclosed from ordering a transfer whenever the factors enumerated in the statute are made to appear, whether this is at an early stage of the action or at a much later point of time." <u>Essex Crane Rental Corp. v. Vic Kirsch Construction Co., Inc.</u>, 486 F. Supp. 529, 535 (S.D.N.Y. 1980).

## CONCLUSION

"[M]otions for transfer lie within the broad discretion of the district court." <u>In re Cuyahoga Equipment Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992). For the reasons discussed herein I conclude, in the exercise of that broad discretion, that this action should be transferred to the United States District Court for the Southern District of Florida for further proceedings, including decision of all other pending motions [15, 23, 30]. Therefore, defendants' motion [37] is

-12-

granted to the extent it seeks transfer of venue but is otherwise denied without prejudice, and the clerk of this court is hereby directed to effectuate the transfer.


Dated:  March 11, 2016

 /s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge